## Lincoln Harlow, Appellee, v. Western Cartridge Company, Appellant.

1. EVIDENCE—*when little weight can be attached to statements by one injured.* If plaintiff, who was injured by an explosion of powder while filling primers does not remember when he signed a release from liability and did not read it nor understand it because his head hurt him, little weight can be attached to it or to statements made shortly after the injury.

2. EVIDENCE—*when question as to statement by employe as to his age not material.* In an action for injuries caused by an explosion of powder while plaintiff, who was 19 or 20 years old, was filling primers, a question as to whether plaintiff stated to defendant's time keeper, when he applied for work, that he was 23 years old, is not material.

3. EVIDENCE—*when statement necessary to make a reply plain properly admitted.* Where plaintiff was injured by an explosion of powder while filling primers, it is not error to refuse to exclude a statement made by a witness for plaintiff, that he said to the foreman that plaintiff was unlucky and should not work on the job, where such statement is necessary to make plain a reply of the foreman as testified to by such witness.

4. DAMAGES—*when not excessive.* A verdict for $1,500 is not excessive where plaintiff's skull was fractured, his face and eyes were powder-burned and his hearing and mental condition affected.

Appeal from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 10, 1913.

JOHN J. BRENHOLT, for appellant.

D. J. SULLIVAN, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This is an appeal from a judgment of $1,500 obtained in the Circuit Court of Madison county, by Lincoln Harlow, a minor, who sued by his next friend Mary E. Hughes, his mother. Appellant seeks a reversal of the judgment on the ground that it is not sustained by a preponderance of the evidence and that

the court erred in excluding certain evidence, and instructing the jury.

As it appeared from the proofs, appellee, a young man 19 or 20 years of age, on October 19, 1911, went to work for appellant at its plant in Madison county, Illinois, where it is engaged in the manufacture of cartridges. He was inexperienced and for the first month was employed at an anvil press. He was then put to work filling primers or caps used for the explosion of cartridges. The appliances by which the primers were filled or charged were called primer plates, and consisted of two plates supported by a stand at convenient height for the workmen. Each plate contained 500 holes which were about the size of the primers. The primer shells are cylindrical in form, a little over an eighth of an inch deep and one-sixteenth of an inch in diameter and they were placed in the holes in the lower plate which is stationary. The upper plate, which rested on the lower could be moved or turned so that when the holes in it did not correspond with the ones in the lower plate, they would form cups of a capacity sufficient to hold the proper amount of powder to fill the priming caps in the lower plate. The upper plate had a rim around the border to keep the powder from falling off and there were pockets or depressions in the corners into which the excess powder, remaining after filling the holes, was brushed by the operator. Appellee's duty consisted in placing on the upper plate a sufficient amount of powder in his judgment to fill the holes and then to brush the powder into the holes by means of a paddle, which consisted of a wooden handle about 15 inches in length with a flexible piece of rubber about four inches square attached at the end like a flag. After the powder was raked into the holes in the upper plate by means of the rubber paddle the excess would be brushed in the pockets in the corners, and the upper plate would then be turned on the lower until the holes in the two plates corresponded, when the powder would drop from the

upper plate into the primers or caps placed in the holes in the lower one. When this had been done it was the duty of the operator to tap on the rim with a small rubber mallet with a wooden handle to jar any powder that might be adhering to the sides of the holes, down in the caps. The powder used for this purpose was sensitive and to avoid explosion by jar or concussion it was necessary that the operator should cause only the rubber part of the mallet to strike the rim and that the strokes should be light. On January 5, 1912, while appellee was engaged in this work, the powder on the plate exploded causing injuries for which he brought this suit. The proofs showed that the priming plate was blown off and a portion struck appellee in the forehead, causing a fracture of the skull, that his face and eyes were powder burned and injured and his hearing and mental condition affected. He was in the hospital nearly three weeks and was confined to his bed at home for more than a week afterwards.

There were two counts in the declaration, the first of which charged that appellant negligently and carelessly directed appellee to fill said primers without informing him of the dangers attending the process and the second that appellant negligently and carelessly used powder that was negligently and carelessly prepared and which, by reason of its improper preparation was liable to explode while being raked into the primers, and that appellee did not know of the danger to which he was thereby exposed; that while appellee, in the exercise of due care and caution for his own safety, was raking the powder from said plates into said primers, said powder, by reason of its improper preparation, exploded.

The proof on the part of appellee tended to show that two days before appellee was injured, there had been two slight explosions or "puff ups" of the powder on his priming plate, which had burned his face; that at the time he was working with what was known

as No. 3 powder raking it into the holes, that the foreman told him the powder was too sensitive and said, "I will have to change the powder tomorrow," and instructed him to go to the magazine where he would find No. 1½ powder and to use that powder the next day, which appellee did; that on the evening of the last mentioned day, the foreman came to him and told him to go to work again on No. 3 powder in the morning; that it was all right now; that appellee said, "Will it blow up?" and the foreman said, "No it is perfectly safe;" that in accordance with such instructions, he on the next day again went to work on No. 3 powder and at about half past four o'clock in the afternoon, while he was raking the powder slowly into the corner, using the rubber paddle, it blew up, causing the injuries complained of.

Appellant introduced evidence tending to show that appellee had been carefully instructed by the foreman and his assistant in regard to the work in which he was engaged and cautioned to be careful and not to tap too hard or hit the rim of the priming plate with the wooden handle of the paddle or mallet; that there was a conspicuous notice reminding appellee of the dangers of his work, posted up near him. This notice, which was introduced in evidence, however, does not appear to call attention to the danger of the work, but simply instructs employes not to place more powder upon the plate at one time, than is necessary to fill all the holes properly. Appellant claimed that appellee must have caused the explosion by striking the rim of the plate with the wooden handle of the mallet and to support that claim, introduced testimony, showing that appellee had the broken handle of the mallet in his hand after the explosion. It was also shown by appellant, that shortly after appellee was injured, while he was in the hospital, he stated in answer to an interrogatory put to him by appellant's foreman, as to how the injury occurred, "I think it was my fault, I think I missed the plate with the mallet;" that he

said, possibly he was in a hurry to get through and clean up; that he wanted to get through and caused the explosion. Appellant also introduced in evidence a release of damages signed by appellee, upon the agreement by appellant to pay him half his regular wages, while he should be incapacitated by his injuries and also to pay his hospital and doctors bills.

This agreement bears date at a time when appellee was still in the hospital and while appellee admitted his signature to it, he stated that he did not remember when he signed it; that he never read it; that he did not understand it, his head hurt him so badly.

If appellee's statements as to the effect of the injury upon his mental faculties are true then it would follow that little weight could be attached to statements made by him or instruments signed by him shortly after he received such injuries. The proofs as a whole appear to us to have sustained the finding of facts by the jury in favor of appellee.

Appellant complains that the court sustained objection to the question asked appellee as to whether he did not tell Megowan, the time keeper, when he applied for work, that he was 23 years of age, for the reason that it would tend to impeach his testimony or lessen the weight to be given to it by the jury. We do not think the question was material here or that the court erred in sustaining an objection to it, but the record and the abstract both show that this question was put to appellee and that he answered, no sir, and that objection was not made until after the next question was put.

Appellant further states that the court erred in refusing the offered testimony of Megowan, its time-keeper, but we fail to find in the record where the testimony of any such witness was offered. Another complaint of appellant is that when a witness for appellee, in detailing a conversation with appellant's foreman, stated that he said to the foreman "Link surely must be unlucky on that job, if I was him I would not

work on it at all," the court refused to sustain an objection thereto. The exclusion of this answer was properly refused for the reason that it was necessary to make plain the reply or explanatory statement of the foreman which followed as testified to by said witness.

Four instructions were given on behalf of appellee, all of which are criticised by appellant. A careful examination of these instructions reveals that they are neither intricate nor misleading and that they correctly state ordinary rules of law applicable to the case. Some complaint is made by appellant, as to the amount of the damages awarded appellee, but when his injuries are considered, the damages do not appear to us to be excessive. The judgment of the court below will be affirmed.

*Affirmed.*